### FLANAGAN v. COLEMAN et al.

(District Court, E. D. New York. August 15, 1918.)

COPYRIGHTS ☞85—INJUNCTION PENDENTE LITE—DENIAL.

 On motion for injunction pendente lite restraining defendants from publishing, printing, or selling a musical composition or any colorable imitation thereof, *held*, that as the affidavits in support of motion were controverted by answering affidavits, and it appeared that plaintiff knew the facts more than a year before the bill was filed, the motion should be denied.

In Equity. Bill by Thomas J. Flanagan against Charles Coleman and Isidor H. Gertler, doing business under the trade-name and style of the Songland Publishing Company, and others. On motion for injunction pendente lite. Motion denied.

John J. Cunneen and Charles P. Robinson, both of New York City, for plaintiff.

George R. Bristor, of New York City, for defendant Coleman.

L. & A. U. Zinke, of New York City, for Plaza Music Co.

GARVIN, District Judge. This is a motion for an order enjoining pendente lite the defendants and each of them, their agents, servants, and employés, during the pendency of this action, from publishing, printing, reprinting, copying, selling, vending, offering for sale, or otherwise distributing the musical composition entitled, "Where is My Mama," or any imitation or colorable imitation of plaintiff's said musical composition, and for such other and further relief as may be just and proper.

The motion is based upon the bill of complaint and the exhibits thereto attached with the affidavit of Margaret V. F. McCarthy, setting forth that she had purchased from the Plaza Music Company six copies of the song in question, and the affidavit of Lew Shaffer which sets forth the employment of the affiant during 1916, 1917, and part of 1918 by Charles Coleman, apparently one of the defendants herein, during which period Coleman had the affiant selling the song in question on the title page of which appeared, "Copyrighted by Charles Coleman," and the music of which was printed by F. J. Lawson Company of New York, S. H. Talbot of Chicago, and the Plaza Music Company of New York.

The complaint sets forth that the defendants Coleman and Gertler on September 3, 1912, signed and filed a certificate in the office of the county clerk of New York county, in which they certified that they were conducting the business of music publishers with an office at 169 West Eighteenth street, borough of Manhattan, city of New York,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under the name of "Songland Music Publishing Company"; that on and before April 20, 1910, plaintiff was the author, composer, and proprietor of both the words and music of a song of great and artistic value entitled, "Where is My Mama"; that on or about April 20, 1910, plaintiff published this composition and affixed to each copy published and offered for sale, "Copyright and published MCMX by Thos. J. Flanagan," "International Copyright Secured," "All Rights Reserved," and on and before April 20, 1910, plaintiff sent to the Librarian of Congress, Copyright Office, a manuscript of the song in question; a certificate of registration appears to have been issued by the register of copyrights to the plaintiff, and on December 11, 1916, he deposited two copies of the publication with the register; that about May, 1911, plaintiff and defendant Coleman made an agreement, whereby plaintiff promised to pay or assign to Coleman one-half of the profits on sales of the said song in consideration of $100, which latter sum Coleman has refused to pay, this agreement being canceled by consent; that the plaintiff has never granted or assigned to said Coleman any interest in the profits of the song entitled, "Where is My Mama," or any right to print, reprint, copy, vend, or offer it for sale; that on the copy of the song plaintiff permitted to be written, out of courtesy to defendant Coleman, who was singing and selling said song as plaintiff's employé, the words, "Words by Chas. Coleman," although Coleman had not in fact written the words; that plaintiff has never granted or assigned to Coleman any interest of ownership, authorship, or proprietorship in the copyright thereof; that this song has acquired great popularity, and plaintiff believes it has and will continue to have a popularity which will be a source of great benefit to plaintiff; that the defendants Coleman and Gertler, appreciating the popularity of the song, and with full knowledge of the rights of plaintiff therein and of the copyright, on and after September 3, 1912, unlawfully caused to be published, and threatens to cause to be published, this song throughout the United States; that all of the defendants except Sheridan and the Plaza Music Company have unlawfully caused to be printed on the first page of the song, and with full knowledge of the plaintiff's copyright of said musical composition, the following "Copyright MCMXVI by Chas. Coleman," "Words and Music by Chas. Coleman," "International Copyright Secured," "Songland Publishing Company, 549 Kosciusko Street, Brooklyn, New York," "All Rights Reserved"; that the defendants Lawson and F. J. Lawson Company at plaintiff's request and prior to April, 1910, printed the song and printed on the first page the words, "Copyright and published MCMX by Thos. J. Flanagan," and that the latter company had full notice of the plaintiff's copyright; that thereafter during 1916 the defendant Lawson Company, at the request of defendant Coleman, unlawfully printed on the first page of copies of the said song the words, "Copyright MCMXVI by Chas. Coleman," and that the said Lawson Company at other times since 1910 had printed copies of said musical composition at the request of the defendant Coleman and without authority of the plaintiff; that the defendants Sheridan and Plaza Music Company are engaged in selling the song; that the publishing, printing, copying, vending, and offering for sale

by the defendants was and is without the authority of the plaintiff, and that plaintiff is being caused, and will be caused, great injury thereby; and that plaintiff has no adequate remedy at law.

It thus appears that the bill of complaint is a lengthy document, and it also appears from an inspection that it was originally verified on December 10, 1917, as was the affidavit immediately hereinafter referred to; both were finally reverified June 27, 1918. Upon these papers plaintiff now asks for an injunction pendente lite.

An additional affidavit by plaintiff is submitted setting forth that on the death of his father in 1912 he went to Syracuse to live, and that in 1916 he learned that defendant Coleman was publishing his song; that the plaintiff had left with the defendant Lawson Company his plates for the printing of the song, and that he wrote to the said Lawson Company to return his plates, which the defendant Lawson refused to do and admitted in writing that they were printing the song for the defendant Coleman, saying:

"That he (referring to Coleman) has made good. He has two automobiles, and no doubt has money besides. However, as we have not had any evidence of your dissolving your partnership, we would print the copies for you the same as we have for him, but you will have to settle with Coleman. He has started on a trip to take in the South, have not heard from him since last week."

The defendant Lawson submits an affidavit saying that he has known Coleman and Flannigan (so spelled in affidavit) since 1910, and has known them as copartners under the firm name of Flannigan & Coleman; that by order of both Flannigan and Coleman he had printed at the F. J. Lawson Company, of which he is president, music sheets with the statement, "Published by Flannigan & Coleman," and Flannigan never made any objection or denied that Coleman was a partner, and in fact defendant's accounts are made out in the name of Flannigan & Coleman; that in the year 1911 Flannigan called on him and stated that he had wound up the partnership with Coleman and would not be responsible for any order placed by Coleman after that date, but that he would continue business and place orders on his own account; that in 1916 or 1917 deponent received an order from Coleman, who was then in Indiana, for several thousand copies of "Where is My Mama"; that in printing these the engraver made an error and had "Copyrighted by Charles Coleman" instead of "Copyrighted by Flannigan"; that these sheets were printed and forwarded to Coleman; that thereafter Coleman wrote deponent calling attention to the mistake, and deponent immediately had the plates changed, so that the new plates contained the statement, "Copyrighted by Songland Publishing Company"; that on the outside of the cover appeared the correct statement, "Words by Coleman and Music by Flannigan." An affidavit was submitted by Daniel G. Gottlieb, who states that for about six or seven years he was employed as a singer by the firm of Flannigan & Coleman (so spelled in affidavit), having been engaged by said Coleman; that immediately thereafter Coleman introduced Flannigan as his partner, to which Flannigan made no objection; that he worked for Flannigan & Coleman for about three months, after which time Flannigan, in Gottlieb's presence, told Coleman that he was having domestic difficulties

with his wife and wished to withdraw from the partnership; that it was agreed that Coleman buy him out for about $100; that thereafter Flannigan withdrew from the firm; that Coleman continued the business, Gottlieb working for him for a period of three years; that this deponent does not know whether Coleman ever paid the $100, but he does know that Flannigan met Coleman at times, and that he (Gottlieb) saw Coleman pay something on account.

The defendant Coleman submits an affidavit in which he states further that he was in partnership with plaintiff; that plaintiff was a pianist and author of certain songs; that Coleman was a public singer; that their acquaintance began in 1909, and that they roomed together on Sixth avenue, New York City; that they decided it would be profitable to join forces and go about the streets singing and playing their compositions; that, accordingly, a copartnership was formed by them, the terms providing that plaintiff was to put into the business such songs as he owned and Coleman was to pay $100, making them equal partners; that he then paid the plaintiff $100; that the partnership was under the name of Flannigan & Coleman (so spelled in affidavit), and it was subsequently changed to Songland Music Publishing Company; that up to this time the song "Where is My Mama" had not been written; that the copartnership was continued for some time; that Coleman then suggested to the plaintiff that they needed a baby song; that thereupon after repeated efforts he (Coleman) alone wrote the words of the song, "Where is My Mama," as it was printed and since has been sung; that thereupon plaintiff undertook to set the words to music and, after many trials, he (Coleman), collaborating with him, prepared the music which is now attached to the words; that the front page bore the statement, "Words by Charles Coleman, Music by Thomas Jay Flannigan," which statement was prepared by plaintiff and not by Coleman, and that the plates for printing were originally under the direction of plaintiff and deponent together; that the copyright of said song was issued in 1916 by the Librarian of Congress; that the application for the copyright was made by T. Jay Flanagan, plaintiff; that in the application the plaintiff stated, "Words by Charles Coleman," "Music by T. Jay Flannigan"; other allegations which it is not necessary to set forth at length follow.

The plaintiff filed an answering affidavit denying a number of allegations made by Coleman and making further allegations, some of which are denied by the president of the defendant Plaza Music Company in an affidavit filed in its behalf.

In view of these conflicting statements and in view of the fact that plaintiff appears to have been guilty of laches in applying for an injunction, I am of the opinion that this motion should be denied. The affidavit of the president of the Plaza Music Company says that Flanagan knew of the conditions about a year ago; that is borne out by the fact that the bill of complaint was originally verified on December 10, 1917, and the affidavit of Flanagan on December 10, 1917.

If this action is placed upon the calendar at once, there is no reason why a trial cannot be had with reasonable promptness. The motion for an injunction pendente lite is therefore denied.